IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL-13 |
| DERECK TAYLOR (13) | |

## FINAL REPORT AND RECOMMENDATION

This Report and Recommendation addresses the following motions filed by Defendant Dereck Taylor:

— Taylor's Second Motion for Bill of Particulars [Doc. 1941];

— Taylor's Motion to Strike Surplusage From Count One of the Second Superseding Indictment [Doc. 1942]; and

— Taylor's Motion to Dismiss Based on Double Jeopardy and Lack of Venue [Doc. 1957].

For the reasons that follow, it is **RECOMMENDED** that these motions be **DENIED**.

## I.    BACKGROUND

On April 28, 2016, a grand jury seated in the Northern District of Georgia returned a 55-page indictment charging Taylor and twenty-eight co-defendants in Count One with Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, 18 U.S.C. § 1962(d).  [Doc. 1.]  On September 26, 2018 the government

obtained a superseding indictment [Doc. 1586], and on October 24, 2018, it obtained a second superseding indictment [Doc. 1750]. The substantive allegations against Taylor, which remain largely unchanged from the initial indictment, are as follows:

The indictment alleges, among other things, that Taylor was a member of the Gangster Disciples (the alleged RICO enterprise) and provided security for co-defendant Vertuies Wall, another alleged Gangster Disciples member. [Doc. 1750 at 32 (Overt Act 82).] The indictment further alleges that on December 12, 2014, Taylor, Wall, and other Gangster Disciples members met outside a nightclub in Macon, Georgia, known to be frequented by rival Crips gang members. [*Id.* (Overt Act 81).] Taylor allegedly retrieved a firearm from Wall [*id.* (Overt Act 82), and then Wall, Taylor, and other Gangster Disciples entered the nightclub and provoked an altercation with the Crips [*id.* at 33 (Overt Act 83)]. Allegedly, Crips gang members retaliated, and during the exchange, a Gangster Disciples member shot and killed a Crips member. [*Id.* at 33 (Overt Act 84).] More gunfire was exchanged, killing two other individuals and injuring three more. [*Id.*] The next day, Wall allegedly told Taylor to arrange for a false police report to be filed stating that Wall's handgun had been stolen before the shooting, when in fact he possessed

that firearm during the shooting.  [*Id.* at 33 (Overt Act 85).]   The indictment additionally alleges that at a separate event on March 1, 2015, Taylor "and another Gangster Disciples member shot at individuals in a vehicle after getting into an altercation with them at a nightclub."  [*Id.* at 34 (Overt Act 90).]

The deadline for Taylor to file pretrial motions was July 26, 2017.  [*See* Doc. 936 (setting deadline to file pretrial motions).]  Nevertheless, following the return of the second superseding indictment in October 2018, Taylor filed three additional pretrial motions.  Specifically, on November 21, 2018, Taylor filed a Second Motion for Bill of Particulars, in which he seeks additional information concerning the overt acts in the second superseding indictment that mention him.  [Doc. 1941.] The following day, on November 22, 2018, he filed a Motion to Strike Surplusage From Count One of the Second Superseding Indictment, urging the Court to strike large swaths of Count One of the second superseding indictment on the grounds that the language is prejudicial to him and irrelevant.  [Doc. 1942.]  Finally, on November 29, 2018, Taylor filed a Motion to Dismiss Based on Double Jeopardy and Lack of Venue, in which he maintains that his federal prosecution violates the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and that venue is improper in this Court.  [Doc. 1957.]  On January 10, 2019, these motions

3

were referred to me for a report and recommendation.  [*See* Dkt. Entry dated Jan. 10, 2019.]   The government has responded to the motions.   [*See* Docs. 2100 (response to second motion for bill of particulars), 2101 (response to motion to strike), 2102 (response to motion to dismiss).]

## II.    SECOND MOTION FOR BILL OF PARTICULARS

In his second motion for a bill of particulars, Taylor contends that he "needs more information about the overt acts that he allegedly committed to adequately prepare his defense" and specifically requests detail concerning some of the Overt Acts in which he is mentioned—namely Overt Acts 81, 82, and 90.  [Doc. 1941.] Taylor also argues that he needs clarification concerning Overt Acts 81 and 82 because he entered a plea under *North Carolina v. Alford*, 400 U.S. 25 (1970), in the Superior Court of Bibb County, Georgia, to charges arising out of the events giving rise to Overt Acts 81 and 82—namely, the shooting at the nightclub in Macon, Georgia.[1]  [*Id.* at 5.]  He maintains that additional detail concerning those Overt Acts "will allow [him] to further evaluate the merits of a double jeopardy

---

[1] "An *Alford* plea is a guilty plea where the defendant maintains a claim of innocence to the underlying criminal conduct charged but admits that sufficient evidence exists to convict him of the offense."  *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1273 (11th Cir. 2014) (citing *Alford*, 400 U.S. at 37-38).

motion and whether he should receive a concurrent sentence if he is convicted of his alleged role in this federal RICO conspiracy." [*Id.* at 6.]

As a threshold matter, this motion is due to be denied as untimely. All the arguments that Taylor raises in his second motion for a bill of particulars could have been raised before the pretrial motions deadline of July 26, 2017. [*See* Doc. 936 (setting deadline to file pretrial motions).] The overt acts at issue in Taylor's motion were included in the initial indictment as Overt Acts 75, 76, and 84. [*Compare* Doc. 1 at 31-32 (Overt Acts 75, 76, 84), *with* Doc. 1750 at 32, 34 (Overt Acts 81, 82, 90).] Indeed, Taylor's first motion for a bill of particulars, which has been ruled on, requested detail (albeit slightly different detail) concerning those very overt acts. [*See* Doc. 1026.] His *Alford* plea argument could also have been raised by the motions deadline. Taylor entered the plea on August 5, 2016, nearly a year before filing his first motion for a bill of particulars in July 2017. [*See* Doc. 1941-2 (state court judgment).] Taylor gives no reason for the delay, nor has he requested leave to file an out-of-time motion. Accordingly, the motion should be denied as untimely.

But even considering the merits of Taylor's motion, the motion should still be denied. As discussed in this Court's ruling on Taylor's first motion for a bill of

particulars, he is not entitled to particularized detail about these or any other overt acts because overt acts are not elements of a RICO conspiracy.  *See United States v. Taylor,* No. 1:16-CR-145-TWT-JKL-13, 2018 WL 5091915, at *2 (N.D. Ga. Mar. 23, 2018), *report and recommendation adopted*, 2018 WL 5084646 (N.D. Ga. Oct. 18, 2018).  His request for additional information about overt acts was not proper then, and it is not proper now.

Likewise, Taylor's argument that he needs detail to address potential double jeopardy issues is without merit.  Taylor's double jeopardy theory is predicated on the theory that a federal prosecution following a state conviction based on the same conduct violates the Double Jeopardy Clause.  But such a theory is foreclosed by binding Supreme Court authority.  *See Abbate v. United States*, 359 U.S. 187, 194-96 (1959) (holding that prior state conviction does not preclude a subsequent federal prosecution based on the same conduct).[2]  Thus, it does not appear that Taylor even has a plausible double jeopardy defense.

_____

[2] The Supreme Court is presently considering the issue of "[w]hether the Court should overrule the 'separate sovereigns' exception to the Double Jeopardy Clause" in *Gamble v. United States*, 138 S. Ct. 2707 (*cert. granted* June 28, 2018). Unless and until the Supreme Court overrules *Abbate*, this Court is bound to apply existing law.  *See, e.g.*, *United States v. Woodford*, No. 1:17-CR-230-SCJ, 2018 WL 6075397, at *2 (N.D. Ga. Nov. 21, 2018) (applying principle that dual sovereign exception permitted defendant's subsequent federal prosecution and

For these reasons, therefore, it is **RECOMMENDED** that Taylor's second motion for a bill of particulars be **DENIED**.

## III.   MOTION TO STRIKE SURPLUSAGE

Taylor next moves to strike surplusage from Count One of the second superseding indictment on the grounds that "specific subsections and allegations in this count of the indictment are too broadly stated, unnecessary, immaterial to the alleged offenses, and prejudicial to [him]." [Doc. 1942 at 1-2.]  Specifically, he moves to strike:

- the sections of Count One headed "Background" (pages 2-6), "Purposes of the Enterprise" (pages 7-8), and "Manner and Means of the Conspiracy" (pages 15-18),

- portions of Overt Acts 81, 82, and 83, and

- the entirety Overt Act 90.

Federal Rule of Criminal Procedure 7(d) grants the Court the authority to strike surplusage from an indictment upon a defendant's motion.  Fed. R. Crim. P. 7(d); *see United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992); *United*

---

noting that "it is not proper for this Court to opine or extend the holding of a case in the face of binding precedent to the contrary").

*States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990), *superseded by statute on other grounds*, as stated in *United States v. McQueen*, 86 F.3d 180, 183-84 (11th Cir. 1996).  The standard for striking surplusage is "exacting"; allegations should not be excised from an indictment "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."  *Id.* (quotation omitted).  "Thus, to prevail on a motion to strike surplusage, a defendant must show, first, that the contested portions of the indictment are irrelevant to the charged crimes, and, second, that the challenged language is unfairly prejudicial or inflammatory."  *United States v. Anyanwu*, No. 1:12-CR-190-TWT-ECS, 2013 WL 1558712, at *4 (N.D. Ga. Mar. 12, 2013), *report and recommendation adopted*, 2013 WL 1561011 (N.D. Ga. Apr. 12, 2013).  The Court may also reserve ruling on a motion to strike surplusage until hearing the evidence and determining its relevance at trial.  *See Awan*, 966 F.2d at 1426.

Turning first to the sections of Count One headed "Background," "Purposes of the Enterprise," and "Manner and Means of the Conspiracy," the Court readily concludes that those sections are relevant.  Taylor argues that the Background section improperly contains information about the development of the Gangster Disciples organization in Chicago; however, the government must prove the

existence of an enterprise as an element of the RICO conspiracy charge, *see* 18 U.S.C. § 1962(c); *United States v. Espinoza*, 635 F. App'x 739, 749 n.9 (11th Cir. 2015), and may do this "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," *Boyle v. United States*, 556 U.S. 938, 945 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  Accordingly, the Court cannot say that information about how the alleged enterprise came into being is immaterial to this case.

The same rationale applies to the "Purposes of the Enterprise" and "Manner and Means of the Conspiracy" sections of the second superseding indictment.  The Government may establish a defendant's participation in an alleged RICO conspiracy either: "(1) by showing an agreement on an overall objective, or (2) . . . by showing that a defendant agreed personally to commit two predicate acts and therefore to participate in a 'single objective' conspiracy."  *United States v. Starrett*, 55 F.3d 1525, 1544 (11th Cir. 1995) (alteration in original) (quotation omitted). "The government can prove an agreement on an overall objective by circumstantial evidence showing that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity."  *Id.* (quotation omitted).  Both the "Purposes of

the Enterprise" and "Manner and Means of the Conspiracy" sections provide notice to Taylor of the alleged objectives of the enterprise and the government's theory of the ways in which the enterprise operated.  As the government properly notes in its response, Taylor's opposition to these portions of the second superseding indictment are, at best, premature because at trial, evidence "will elucidate the relevance of this allegedly surplus language."  *Anyanwu*, 2013 WL 1558712, at *4.

Turning next to the overt acts, Taylor moves to strike the allegation in Overt Act 81 that Taylor "and other Gangster Disciples members met outside Wings Café, a nightclub known to be frequented by rival Crips gang members," on the grounds that "there is no other indication in the indictment or the discovery material that any GD member ever knew that Wings Café was 'frequented by rival Crips gang members.'"  [Doc. 1942 at 7.]  Taylor makes similar challenge to Overt Act 82, which alleges that Taylor provided security for co-defendant Wall and retrieved a firearm from codefendant Wall.  Specifically, Taylor contends that "there is no other indication in the indictment or the discovery material that Taylor ever provided security for Defendant Wall."  [*Id.* at 8.]  The government responds that it expects admissible testimony and evidence will prove those allegations.  [Doc.

10

2101 at 4.]  At this stage, the Court agrees with the government that the allegation is not immaterial surplusage.

Taylor next moves to strike the portion of Overt Act 83 that alleges Taylor, "along with other Gangster Disciples members, then entered the Wings Café, and provoked an altercation with Crips gang members seconds after entering by throwing a cigar, a bottle, and a chair at the Crips gang members."  [Doc. 1942 at 8.]  Taylor maintains that this overt act should be struck as surplusage because the indictment does not allege that any particular Gangster Disciples member committed any of these acts, and, in Taylor's view, falsely infers that Taylor personally "provoked an altercation," threw "a cigar," threw "a bottle," or threw "a chair at the Crips gang members."  [*Id.* at 8-9.]  The Court disagrees.  As the government points out in its response, it is proceeding under conspiracy and aiding-and-abetting theories, so it does not matter that Overt Act 83 does not specifically identify which acts Taylor allegedly committed.  [*See* Doc. 2101 at 4.]  Accordingly, the Court cannot agree that the allegations in Overt Act 83 are immaterial or irrelevant.

11

Finally, Taylor moves to strike Overt Act 90 in its entirety on the grounds that evidence taken during an evidentiary hearing in his case did not reveal evidence to support the allegations. In Overt Act 90, the government alleges that

> On or about March 1, 2015, defendant DERECK TAYLOR and another Gangster Disciples member shot at individuals in a vehicle after getting into an altercation with them at a nightclub.

[Doc. 1750 at 34.] Citing this Court's suppression hearing on motions to suppress evidence seized at and statements he made following a traffic stop on March 1, 2015, Taylor maintains that "[e]vidence presented at a suppression hearing confirms that this overt act is inaccurately presented and unrelated to the alleged racketeering conspiracy." [Doc. 1942 at 9; *see also* Doc. 1273-2 (transcript of evidentiary hearing).] He maintains that evidence presented at the suppression hearing suggested that Taylor and Christopher Powell were in a vehicle together on March 1, 2015; that they were following another vehicle when the occupants of the other vehicle heard a gunshot; the occupants of the other vehicle reported this incident to the police; and Taylor and Powell were stopped and taken into custody. [Doc. 1942 at 9-10.] Taylor points out that there was no evidence at the suppression hearing, however, "that the handgun was fired at any person in the other vehicle; that there had been a previous altercation in a night club; or that the incident was

related in any way to the RICO conspiracy, the GD enterprise, or any sort of gang activity." [*Id.* at 10.] Taylor further argues that even though he admitted to firing the gun, he was charged with reckless conduct, a misdemeanor offense for which he was not prosecuted. [*Id.*]

This argument is without merit. The purpose of the evidentiary hearing was not to determine whether Taylor or anyone else fired shots at someone or whether the incident was (or was not) related to alleged gang activity. Rather, the purpose of the hearing was to determine the constitutionality of the search following the traffic stop and Taylor's custodial statements. Accordingly, the Court rejects Taylor's attempt to move for what is, in essence, summary judgment based on evidence adduced at the evidentiary hearing.

In sum, the Court finds that none of the language in the second superseding indictment that Taylor challenges is irrelevant. Because a defendant must prove both that the challenged allegations are not relevant and that they are prejudicial, it does not matter how prejudicial the language may be. *See United States v. Greenhill*, No. 1:18-cv-108-MHC-JFK, 2018 WL 5659933, at *5 (N.D. Ga. Sept. 20, 2018), *report and recommendation adopted*, 2018 WL 5649898 (N.D. Ga. Oct. 31, 2018). Accordingly, it is **RECOMMENDED** that Taylor's Motion to Strike

be **DENIED** without prejudice to Taylor raising these arguments after introduction of the Government's evidence at trial. *See id.*

## IV.   MOTION TO DISMISS

Finally, Taylor moves to dismiss the RICO conspiracy charge on two grounds: (1) the Double Jeopardy Clause bars the successive federal prosecution for conduct for which he was charged and to which he pled guilty in state court and (2) this Court lacks venue. [Doc. 1957.] Regarding the double jeopardy argument, as noted above, "until the Supreme Court reconsiders the dual sovereign doctrine when a state, rather than a federal territory, initiates the first prosecution and the federal government brings a second prosecution for the same act and offense, this Court is bound by the existing law that permits these duplicate prosecutions." *Woodford*, 2018 WL 6075397, at *2 (quoting *United States v. Ferrell*, No. 1:17-CR-2461-TCB-CMS, 2017 WL 6032947, at *3 (N.D. Ga. Dec. 6, 2017)); *see also United States v. Stevens,* No. 1:18-CR-160-SCJ, 2018 WL 6190676, at *1 (N.D. Ga. Nov. 28, 2018) (same). Taylor's double jeopardy argument, therefore, is without merit.

As for venue, Taylor argues that venue is improper in this district because he "he did not participate in the alleged RICO conspiracy when any overt act was

committed in the Northern District of Georgia" and he "did not even arguably participate in" the RICO conspiracy alleged in the second superseding indictment. [Doc. 1957 at 42.]  This argument fails as well.

"Criminal defendants have a constitutional right to be tried in the state and district in which the crime was committed."  *United States v. Brantley*, 733 F.2d 1429, 1433 (11th Cir. 1984).  Taylor is charged in this case with RICO conspiracy, which is a "continuing offense."  *See Smith v. United States*, 568 U.S. 106, 111 (2013) (citing *United States v. Kissel*, 218 U.S. 601, 610 (1910)).  Under 18 U.S.C. § 3237, venue for prosecution of a continuing offense is permitted "in any district in which such offense was begun, continued, or completed."  "To establish a RICO conspiracy violation under 18 U.S.C. § 1962(d), the government must prove that the defendants objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes."  *Starrett*, 55 F.3d at 1543 (quotation omitted). Significantly, a defendant need not engage in an overt act to commit RICO conspiracy; rather all the statute requires is that he or she "intend to further an endeavor which, if completed, would satisfy each element of a substantive criminal

15

offense, [and] it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 64 (1997).

Here, the second superseding indictment alleges on its face that Taylor "did knowingly, willfully and unlawfully combine, conspire, confederate, and agree with one another to violate Title 18, United States Code, Section 1962(c); that is, to conduct and participate directly and indirectly in the conduct of the affairs of said enterprise through a pattern of racketeering activity, as defined by Title 18, United States Code, Sections 1961(1) and (5), which consisted of multiple threats and acts involving" multiple predicate offenses.   [Doc. 1750 at 9-10.]   The indictment further alleges that as part of the conspiracy, each defendant charged in Count One (including Taylor) "agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise."   [*Id.* at 11.] Critically, the indictment alleges facts showing that the conspiracy was begun, continued, or completed in the Northern District of Georgia—indeed, the indictment is replete with allegations that acts in furtherance of the alleged conspiracy were conducted in this district.   Because RICO conspiracy is a continuing offense, the fact that the Overt Acts involving Taylor are alleged to have occurred outside the district is of no moment.

It also appears that Taylor is really seeking some sort of pretrial summary adjudication as to venue.  That is a remedy the Court cannot grant.  A jury—not the Court—must decide whether venue is proper in a criminal case.  *See United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) ("As with resolving other important elements contained in a charge, a jury must decide whether the venue was proper."); *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) ("[A] court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.").  Since a grand jury has returned an indictment that on its face sufficiently alleges venue in this district, Taylor's pretrial challenge to venue must be denied.

Accordingly, it is **RECOMMENDED** that Taylor's Motion to Dismiss be **DENIED**, without prejudice to raising his arguments as to venue after the close of the government's case at trial.

## V.     CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Taylor's Second Motion for Bill of Particulars [Doc. 1941]; Taylor's Motion to Strike Surplusage From Count One of the Second Superseding Indictment [Doc. 1942]; and Taylor's

Motion to Dismiss Based on Double Jeopardy and Lack of Venue [Doc. 1957] be

**DENIED**.

There are no matters pending before the undersigned for Defendant Taylor

(13).  Accordingly, this matter as to this defendant remains **CERTIFIED READY**

**FOR TRIAL.**

IT IS SO RECOMMENDED this 28th day of January 2019.

_____

JOHN K. LARKINS III
United States Magistrate Judge

18